## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STACY ANNE ALLEN, | : | Civil No. 1:24-CV-1957 |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| FRANK BISIGNANO, | : | |
| Commissioner of Social Security[1] | : | |
| | : | |
| **Defendant.** | : | |

## <u>MEMORANDUM OPINION</u>

### I.   <u>Introduction</u>

Disputes regarding a Social Security Administrative Law Judge's (ALJ) assessment of competing medical opinions are a staple of Social Security litigation. In conducting this assessment the ALJ is guided by regulations which call for the holistic evaluation of all opinions based upon two criteria: consistency and supportability. Once the ALJ completes this task, we are enjoined to apply a deferential standard of review to the ALJ's decision, a standard of review which

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

simply asks whether there is "substantial evidence" supporting the Administrative Law Judge's (ALJ) determination. With respect to this legal guidepost, as the Supreme Court has explained:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S. Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S. Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S. Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

In the instant case, the plaintiff alleges that the ALJ who considered Stacy Allen's case erred in the evaluation of two medical opinions issued by treating CRNPs, Jaime Henson and Emily Boyce. In both instances, the ALJ found these opinions unpersuasive because they were unsupported by and inconsistent with the clinical record, including the treating sources' own contemporaneous treatment notes. After an independent review of the record, and mindful of the fact that

2

substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" <u>Biestek</u>, 139 S. Ct. at 1154, we find that substantial evidence supported the ALJ's findings in this case. Therefore, for the reasons set forth below, we will affirm the decision of the Commissioner.

## II.   <u>Statement of Facts and of the Case</u>

### A. <u>Introduction</u>

On May 26, 2022, Stacy Allen filed a Title II application for a period of disability and disability insurance benefits along with a Title XVI application for supplemental security income, alleging disability beginning October 16, 2021. (Tr. 10). According to Allen, she was totally disabled due to a series of medical conditions, including degenerative disc disease, fibromyalgia, migraines, and obesity. (Tr. 12). Allen was born was born on November 14, 1981, and was 39 years old, which is defined as a younger individual by the Commissioner's regulations, at the time of this alleged onset of her disability. (Tr. 20). She had a high school education and had previously worked as a certified nursing assistant.

### B. <u>Allen's Clinical History</u>

The ALJ described Allen's pertinent clinical treatment history in the following terms:

> On May 7, 2021 the claimant reported feelings of decreased sensation/tingling in her hands and feet as well as on her face (Exhibit

5F, page 46). Her gait was intact as was motor function. In July 2021 the claimant presented with a history of COVID-19, headache, irritable bowel, chronic back pain, seasonal allergies and recurrent major depressive disorder (Exhibit 17F, page 4). She complained of headaches that for over 2 years she has been taking Ibuprofen every day. She also noted chronic low back pain and severe left hip pain. She had normal strength in all extremities and there was no muscle or joint tenderness with intact sensation and cautious gait because of left hip pain (Exhibit 17F, page 5). She was in no apparent distress. In August 2021 the claimant presented to the hospital and was noted to have degenerative changes of the C5/C6 and C6/C7 discs but was being seen for swelling in her throat (Exhibit 2F, page 15). In June 2022 the claimant was seen for a well adult exam where she indicated that when she sits for a few minutes her back hurts and she has to change position frequently to change pressure points and that she has difficulty grasping and holding things and that she drops things frequently (Exhibit 5F, page 30). Physical examination showed normal range of motion of the back and there was no edema (Exhibit 5F, page 33). Sensation and motor function was intact as was coordination and gait (Exhibit 5F, page 34). In July 2022 the claimant presented for depression with no plan and headaches were more frequent and tried not to take Fioricet frequently (Exhibit 5F, page 21). In August Prozac was increased and she indicated no side effects from the medication and was not crying as much but was still having migraines (Exhibit 5F, page 15).

On February 23, 2023 the claimant was seen for chronic migraines, but she indicated that she has headaches that "want to turn into migraines" but has not had Toradol in the past 6 weeks and takes ibuprofen and Mobic (Exhibit 9F, page 4). She had normal strength and had intact gait with orientation to all spheres with cooperative behavior, normal thought content and normal memory (Exhibit 9F, page 7). In June 2023 the claimant had right sided neck pain and exam was consistent with torticollis (Exhibit 10F, page 3).

In July 2023 the claimant presented and her doctor indicated that they had prescribed the claimant Cymbalta but that she had never started it and that she had restless leg movements about 2-3 months ago (Exhibit 11F, page 3). The claimant was noted to have a body mass index of

36.67 (Exhibit 11F, page 7). Musculoskeletal exam was noted to be grossly normal, but the left hip had decreased range of motion with pain in the groin with abduction and normal gait (Exhibit 11F, page 7).

In August 2023 the claimant was in no acute distress with normal musculoskeletal findings and normal strength with normal gait (Exhibit 13F, page 17). She was prescribed Cymbalta for fibromyalgia and arthritis and she noted feeling better on it and had worsening when she had run out of it for about a week (Exhibit 13F, page 13). Her medications were working for her migraines. In October 2023 the claimant noted that she felt better on the Cymbalta and so they increased dosing to hopefully gain more control of her symptoms (Exhibit 13F, page 4). The claimant was found to be functioning in the light work category after occupational therapy.

In October 2023 the claimant was seen for occupational therapy evaluation where physical examination showed normal range of motion in the upper and lower extremities as well as at the lumbar spine with full strength in the upper and lower extremities (Exhibit 16F, page 7). She was able to sit for 116 minutes with occasional weight shifting and she did not exhibit pain behaviors during testing. She also tolerated walking and standing for a total of 104 minutes with the longest duration being 99 minutes (Exhibit 16F, page 4).

(Tr. 16-17).

This clinical history was derived in part from progress notes made by the two medical sources whose opinions are at issue in this case, CRNP Jaime Henson and CRNP Emily Boyce. CRNP Henson had at least seven clinical encounters with Allen between April of 2021 and February of 2023. (Tr. 379, 390-91, 397, 406-07, 419, 483, 587-88). In each of these encounters CRNP Henson documented largely normal and benign findings, reporting that Allen's range of motion and gait were typically

normal and intact; that she was fully alert and oriented; and that her judgment was normal and appropriate. (Id.) CRNP Boyce had five clinical encounters with Allen between April and October 2023. (Tr. 694, 701, 713, 730, 734, 742). Like CRNP Henson, CRNP Boyce's progress notes describing Allen's condition were remarkably unremarkable. Thus, CRNP Boyce consistently indicated that Allen's strength, range of motion, gait, and mood were normal. (Id.)

## C. **The Medical Opinion Evidence**

In Allen's case, as many as eight medical sources opined regarding the severity of the plaintiff's symptoms and the degree to which her impairments precluded gainful employment. Six of these medical sources concluded that Allen retained the ability to perform some work notwithstanding her impairments.

A number of these opinions were rendered by non-examining state agency experts. At the outset, in a December 2022 initial disability determination, Dr. Susan Turner and Dr. Hong Park concluded that Allen could perform light, semi-skilled work. (Tr. 54-70). Upon reconsideration in April of 2023, Dr. Virginia Martin and Dr. Gene Whang reached similar findings, concluding that Allen could perform a range of light, unskilled labor. (Tr. 72-80).

Two independent, examining medical sources agreed that Allen retained the ability to perform some work notwithstanding her impairments. On November 22,

2022, Dr. James Goodyear reported that Allen could frequently lift up to ten pounds, occasionally lift twenty pounds; occasionally carry ten to twenty pounds; could sit for four hours a day; stand for two-to-three hours daily; and could walk for one-to-two hours each day. (Tr. 556-557). The doctor also found that Allen could reach overhead occasionally; frequently reach and handle; and continuously feel and finger. (Tr. 558).

On December 8, 2022, Dr. Stacy Trogner, conducted a mental health evaluation of Allen. (Tr. 570-577). Dr. Trogner found Allen's affect appropriate; she was fully oriented; and her memory and concentration were intact. (Tr. 572). Allen displayed average cognitive functioning, and her insight and judgment were good. (Tr. 573). Dr. Trogner concluded that Allen experienced no limitations meeting the mental demands of the workplace. (Tr. 575-576).

The opinions of CRNP Henson and CRNP Boyce stood in stark contrast to this medical consensus which found that Allen could perform light work. On June 9, 2022, CRNP Henson submitted a medical statement which described extreme impairments on Allen's part. (Tr. 367-368). According to CRNP Henson, Allen could only occasionally lift or carry ten pounds; could never lift or carry greater weights; would require frequent breaks; and would miss more than four days of work each month. (Id.) Likewise, on October 24, 2023, CRNP Boyce completed medical

questionnaires which stated that Allen was extremely limited in her ability to sit, stand and walk at work, and would miss more than four days of work each month due to her impairments. (Tr. 748-749). CRNP Boyce also opined that Allen suffered from multiple marked impairments in terms of meeting the mental demands of the workplace. (Tr. 753-754).

These findings by CRNP Henson and Boyce were not only at odds with the medical consensus of other sources; they were directly contradicted by their own treatment notes. For example, the extreme opinion outlined by CRNP Henson on June 9, 2022, (tr. 367-368), cannot be reconciled with her June 9, 2022, progress notes which stated that Allen's sensation, coordination, gait, and motor function were intact. (Tr. 407). Similarly, this extreme medical opinion conflicted with CRNP Henson's contemporaneous notes which described Allen's perception, mood, attention judgment and insight as normal. (Id.) CRNP Boyce's severe medical opinion dated October 24, 2023, in turn, was contradicted by her October 24, 2023, treatment notes which described Allen as cooperative, alert and oriented, with an appropriate affect, and normal gait, movement, and strength. (Tr. 734).

It was against this medical background that Allen's case came to be considered by the ALJ.

### D. **The ALJ Hearing and Decision.**

A hearing was conducted in this case on November 20, 2023, at which Allen

and a vocational expert testified. (Tr. 35-53). Following this hearing, on January 24,

2024, the ALJ issued a decision in Allen's case. (Tr. 7-27). In that decision, the ALJ

first concluded that Allen had not engaged in substantial gainful activity since

October 16, 2021, and met the insured status requirements of the Social Security Act

through September 30, 2025. (Tr. 12). At Step 2 of the sequential analysis that

governs Social Security cases, the ALJ found that Allen had the following severe

impairments: degenerative disc disease, fibromyalgia, migraines, and obesity. (Id.)

At Step 3, the ALJ determined that Allen did not have an impairment or

combination of impairments that met or medically equaled the severity of one of the

disability listing impairments. (Tr. 14-15). Between Steps 3 and 4, the ALJ then

fashioned a residual functional capacity ("RFC") for the plaintiff which considered

all of her impairments as reflected in the medical record, and found that:

> After careful consideration of the entire record, the undersigned finds
> that the claimant has the residual functional capacity to perform light
> work as defined in 20 CFR 404.1567(b) and 416.967(b) except: The
> claimant is limited to occasional postural movements except she can
> never climb ladders, ramps, and scaffolds. She must avoid concentrated
> exposure to extreme cold, vibration, loud noise, vibration, fumes,
> odors, dusts, gases, poor ventilation, dangerous machinery, and
> unprotected heights.

(Tr. 15).

In reaching this conclusion, the ALJ found the medical consensus of the state agency exerts and consulting examining sources persuasive. (Tr. 18-20). The ALJ was less persuaded by the outlier opinions of CRNP Henson and Boyce, finding that they were both unsupported by and inconsistent with the overall medical record. As the ALJ observed:

Jaime Henson, CRNP provided an opinion on June 9, 2022 (Exhibit 3F). Ms. Henson opined that due to fibromyalgia, migraines, degenerative disc disease, arthritis and depression the claimant would have impaired concentration constantly and could sit about an hour and stand/walk an hour in an 8 hour workday. The claimant could occasionally lift and carry less than 10 pounds. She would miss more than four days of work a month. The undersigned finds this opinion to be unpersuasive as it is unsupported by her physical examination with largely normal findings (Exhibit 9F, pages 6-7). It is also inconsistent with the updated record which shows normal gait as well as full strength and conservative treatment as noted above (Exhibit 16F). As such, there is no indication that the claimant would be so significantly limited as the record generally shows she is in no acute distress at appointments and significant measures have not been recommended.

Emily Boyce, CRNP provided an opinion on October 24, 2023 indicating that she has treated the claimant since May 3, 2023 (Exhibits 14F, 15F). She opined the claimant had marked limitations in understanding and memory, as well as in concentration and persistence. She would miss 4 or more days each month but would only have at most slight limitation interacting with others. The claimant would have moderate limitation in adapting to changes in the work setting. The claimant was noted to have at least a 10-year history of depression and fibromyalgia and in 2020 developed COVID-19 with memory changes and worsening mental health since then. Ms. Boyce also opined that chronic pain would frequently interfere with the attention and concentration to perform simple work-related tasks. She could sit 1

hour and stand/walk 1 hour in an 8-hour workday and would need to shift position at will. She would also need unscheduled breaks. The claimant could occasionally lift and carry up to 20 pounds and would have limitations in handling, fingering, and reaching. These opinions are found to be unpersuasive as they are unsupported by the physical examinations Ms. Boyce administered which finds largely normal physical findings that would not result in the extreme limitations alleged here (Exhibits 11F, pages 7, 14, 26; 13F, pages 9, 17). Additionally, it is not consistent with the totality of the record which shows normal gait as well as full strength and conservative treatment as noted above. As such, there is no indication that the claimant would be so significantly limited as the record generally shows she is in no acute distress at appointments and significant measures have not been recommended.

(Tr. 18-19).

Having made these findings, the ALJ concluded that Allen could not perform her past relevant work but that there were other jobs that existed in significant numbers in the national economy that she could perform. (Tr. 20-21). Accordingly, the ALJ concluded that Allen had not met the stringent standard of disability set by law and denied this claim. (Id.)

This appeal followed. (Doc. 1). On appeal, Allen contends that the ALJ erred in the analysis of CRNP Henson and Boyce's medical opinions. These issues are fully briefed by the parties and are, therefore, ripe for resolution. Upon consideration, we find that substantial evidence supported the ALJ's findings that these opinions—which were contradicted by the medical sources' own treatment

notes—were unpersuasive. Accordingly, we will affirm the decision of the Commissioner.

## III.    Discussion

### A. Substantial Evidence Review – the Role of this Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. § 405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision]

12

from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has recently underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application

13

of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D.Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions flow from this deferential standard of review. First, when conducting this review, "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford, 399 F.3d at 552). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather, our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

14

> In <u>Burnett</u>, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. <u>Id.</u> at 120; <u>see</u> <u>Jones v. Barnhart</u>, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "<u>Burnett</u> does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." <u>Jones</u>, 364 F.3d at 505.

<u>Diaz v. Comm'r of Soc. Sec.</u>, 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice, ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

## B. **Initial Burdens of Proof, Persuasion, and Articulation for the ALJ**

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); <u>see also</u> 20 C.F.R. §404.1505(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42

U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §404.1520(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe

impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §404.1545(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a

17

physician is misguided." <u>Cummings v. Colvin</u>, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where a well-supported medical source has identified limitations that would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. <u>Biller</u>, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. <u>See Titterington v. Barnhart,</u> 174 F. App'x 6, 11 (3d Cir. 2006); <u>Cummings v. Colvin</u>, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if

it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §404.1512(f); Mason, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory

19

explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-07. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999).

### C. **Legal Benchmarks for the ALJ's Assessment of Medical Opinions**

The plaintiff filed this disability application after a paradigm shift in the manner in which medical opinions were evaluated when assessing Social Security claims. Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy. However, in March of 2017, the Commissioner's regulations governing medical opinions changed in a number of fundamental ways. The range of opinions that ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis. As one court as aptly observed:

> The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer

give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), see 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." Id. at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the

persuasiveness of a medical source's opinion. Id. at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). Id. at §§ 404.1520c(b)(3), 416.920c(b)(3).

Andrew G. v. Comm'r of Soc. Sec., No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020).

Oftentimes, as in this case, an ALJ must evaluate various medical opinions. Judicial review of this aspect of ALJ decision-making is still guided by several settled legal tenets. First, when presented with a disputed factual record, it is well-established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Thus, when evaluating medical opinions " the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Mason, 994 F.2d at 1066). Therefore, provided that the decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight.

Further, in making this assessment of medical evidence:

An ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion. See Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015);

22

Turner v. Colvin, 964 F. Supp. 2d 21, 29 (D.D.C. 2013) (agreeing that "SSR 96–2p does not prohibit the ALJ from crediting some parts of a treating source's opinion and rejecting other portions"); Connors v. Astrue, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June 10, 2011). It follows that an ALJ can give partial credit to all medical opinions and can formulate an RFC based on different parts from the different medical opinions. See e.g., Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015).

Durden v. Colvin, 191 F.Supp.3d 429, 455 (M.D. Pa. 2016).

### D. The Commissioner's Decision Will Be Affirmed.

In the instant case, Allen invites us to set aside the ALJ's factual determination that the medical opinions of CRNP Henson and Boyce, which conflicted with their own contemporaneous treatment notes, were unpersuasive. In considering this argument, we are mindful that we are not free to substitute our independent assessment of the evidence for the ALJ's determinations. Rather, we must simply ascertain whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, Richardson, 402 U.S. at 401, and "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce, 487 U.S. at 565. Judged against these deferential standards of review, we find that substantial evidence supported the ALJ 's evaluation of these medical opinions.

On this score, it is well established that  the ALJ may discount a treating

23

source opinion when it conflicts with other objective tests or examination results. Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 202–03 (3d Cir. 2008). Likewise, an ALJ may conclude that discrepancies between the treating source's medical opinion, and the doctor's actual treatment notes, justifies giving a treating source opinion little weight in a disability analysis. Torres v. Barnhart, 139 F. App'x 411, 415 (3d Cir. 2005). Finally, "an opinion from a treating source about what a claimant can still do which would seem to be well-supported by the objective findings would not be entitled to controlling weight if there was other substantial evidence that the claimant engaged in activities that were inconsistent with the opinion." Tilton v. Colvin, 184 F. Supp. 3d 135, 145 (M.D. Pa. 2016).

Here, fairly construed, the ALJ's decision finding these opinions unpersuasive was based upon a determination that that these opinions—which were contradicted by contemporaneous treatment notes—were unsupported by and inconsistent with the overall medical record. Substantial evidence supported this conclusion. For example, the extreme opinion outlined by CRNP Henson on June 9, 2022, (tr. 367-368), directly conflicted with her June 9, 2022, progress notes which stated that Allen's sensation, coordination, gait, and motor function were intact. (Tr. 407). Similarly, this extreme medical opinion was inconsistent with CRNP Henson's contemporaneous notes which described Allen's perception, mood, attention

24

judgment and insight as normal. (Id.) Likewise, CRNP Boyce's severe medical opinion dated October 24, 2023, was contradicted by her October 24, 2023, treatment notes which described Allen as cooperative, alert and oriented, with an appropriate affect, and normal gait, movement, and strength. (Tr. 734). The patent inconsistencies between these sources' opinions and their own treatment notes fully justified the decision to discount these opinions as unpersuasive. Torres, 139 F. App'x at 415.

Moreover, the ALJ's discussion of these opinions adequately articulated the basis for finding them unpersuasive and anchored those findings on the key benchmarks set by the Commissioner's regulations—supportability and consistency. Thus, contrary to Allen's assertions, this is not a case where the Commissioner is fashioning a *post ho*c rationale for the ALJ's decision. Rather, that rationale is plainly stated in the decision itself and the ALJ's rationale draws upon substantial evidence. There was no error here.

At bottom, it appears that the plaintiff is requesting that this Court re-weigh the evidence. This we may not do. See Chandler, 667 F.3d at 359 (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations"); see also Gonzalez v. Astrue, 537 F.Supp.2d 644, 657 (D. Del. 2008) ("In determining whether substantial

evidence supports the Commissioner's findings, the Court may not undertake a *de novo* review of the Commissioner's decision and may not re-weigh the evidence of the record") (internal citations omitted)). Rather, our task is simply to determine whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, Richardson, 402 U.S. at 401, and "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce, 487 U.S. at 565. Finding that this deferential standard of review is met here, we conclude that a remand is not appropriate.

In closing, the ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported by substantial evidence. This is all that the law requires, and all that a claimant can demand in a disability proceeding. Thus, notwithstanding the argument that this evidence might have been viewed in a way which would have also supported a different finding, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion.'" Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting Hunter Douglas, Inc. v. NLRB, 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential

standard of review that applies to appeals of Social Security disability determinations, we find that substantial evidence supported the ALJ's evaluation of the medical opinion evidence in this case and will affirm that decision.

## IV.   **Conclusion**

Accordingly, for the foregoing reasons, the final decision of the Commissioner denying this claim will be AFFIRMED.

An appropriate order follows.

*s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED: April 24, 2026